IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHAD PECHA**, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) 2:13cv1666 |
| | ) Electronic Filing |
| **FRANK BOTTA**, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## I. INTRODUCTION

On November 21, 2013, Plaintiff Chad Pecha ("Plaintiff" or "Pecha") initiated this action against a private attorney, Frank Botta ("Defendant" or "Botta"), asserting a variety of state and federal claims stemming from Botta's legal representation of Pecha's former employer, 5J Oilfield Services, LLC ("5J"). (Doc. No. 1). Specifically, Plaintiff asserts the following claims: "equal protection banning plaintiff from seeking employment and to be secure in his person" under 42 U.S.C. § 1983 (Count I); tortious interference with business relations (Count II); business disparagement (Count III); usurpation of business opportunity (Count IV); defamation (Count V); and a declaratory judgment action (Count VI).[1] Id.

Presently pending before the Court is Defendant's Motion to Dismiss (Docket No. 5), Plaintiff's Brief in Opposition (Docket No. 8), and Defendant's Reply Brief (Docket No. 10).

---

[1] In his complaint, Pecha mistakenly labeled his third and fourth claims as "Count III." Consequently, the numbers for Counts IV, V and VI in his complaint are each off by one. (Doc. No. 1).

1

For the reasons set forth below, Defendants' Motion to Dismiss will be granted in part and denied in part.

## II. FACTUAL BACKGROUND

Prior to the events underlying this litigation, Pecha was employed by 5J, a company represented by Botta in his capacity as a private attorney. (Compl. ¶¶ 1-3). Upon leaving his employment with 5J, Pecha executed a Confidentiality and Non-Compete Agreement ("the Agreement"), drafted by Botta, pursuant to which Pecha agreed not to seek employment with another company in the oil and gas industry for a period of three years. (Compl. Ex. A). The Agreement also contained geographic restrictions that encompassed eleven states, including Ohio. (Id.). In consideration for Pecha's agreement not to compete, 5J agreed to withdraw a prior federal lawsuit that it had filed against Pecha in the Western District of Pennsylvania related to his termination. (Id.). Pecha and a representative for 5J each signed the Agreement. (Id.).

At some point in October of 2013, Botta received word that an Ohio company, Mid-East Trucking ("Mid-East"), had either hired Pecha or was about to hire Pecha. (Compl. ¶ 8; Compl. Ex. B). In response, Botta drafted a letter to Mid-East informing them that Pecha was subject to a non-compete agreement and that any attempt to hire Pecha would violate that agreement. Id. Botta also telephoned Mid-East to advise them of the same. (Compl. ¶ 8). In the course of those communications, Pecha asserts that Botta made "various statements and accusations . . . designed to cast [Pecha] in a bad light to a potential employer." (Id. ¶ 51). Specifically, Botta allegedly stated that "I wouldn't trust [Pecha] as far as I could throw him." (Id. ¶ 52). As a result of Botta's actions, Pecha failed to obtain employment with Mid-East. (Id. ¶ 13).

**III.  LEGAL STANDARD**

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

The Supreme Court in Iqbal clarified that the decision in Twombly "expounded the pleading standard for 'all civil actions.'"  Iqbal, 556 U.S. at 684.  The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted.  Id. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  The determination as to whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 556). In light of Iqbal, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## IV. DISCUSSION

### A. Section 1983 (Count I)

Section 1983 imposes civil liability upon any person who, under color of state law, deprives someone of the rights, privileges, or immunities secured by the federal Constitution or the laws of the United States. Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). To state a claim under Section 1983, a plaintiff must allege a deprivation of a right secured by the Constitution or laws of the United States and that the deprivation occurred under color of state law. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 931 (1982). An individual acts under color of state law when: "(1) he is a state official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature, chargeable to the state." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)).

In his Section 1983 claim, Pecha contends that Botta violated his right to seek and gain employment as secured by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution. (Compl. ¶¶ 18, 20). Pecha maintains that Botta is a state actor for purposes of Section 1983 because of his role as a licensed attorney and "officer of the Court." (Id. ¶15). Specifically, Pecha contends that Botta acted under color of state law by "calling a potential Ohio employer from his Pennsylvania law office" and by issuing

4

an "actual and realistic threat of state action [by] fil[ing] a lawsuit" against Mid-East if they hired Pecha. (Doc. No. 8 at p. 7).

There are few principles as well-settled in the law as this: an attorney cannot be considered a state actor simply because of his status as an attorney and officer of the court. As explained by the United States Supreme Court:

> It is often said that lawyers are "officers of the court." But the Courts of Appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of § 1983.

Polk County v. Dodson, 454 U.S. 312, 318-19 (1981). Thus, "[a]lthough states license lawyers to practice, and although lawyers are deemed 'officers of the court,' this is an insufficient basis for concluding that lawyers act under color of state law for the purposes of [Section 1983]." Henderson v. Fisher, 631 F.2d 1115, 1119 (3d Cir. 1980); see also Angelico, 184 F.3d at 277-78 ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their positions as officers of the court."). Pecha's argument that Botta acted under color of state law by making an interstate telephone call and threatening to file a lawsuit to protect his client's rights is patently frivolous. In the absence of any state action, Pecha's Section 1983 claims must be dismissed.[2]

### B. Tortious Interference with Business Relations (Count II)

---

[2] As noted above, Pecha invoked both the United States Constitution and the Pennsylvania Constitution in his Section 1983 claim. However, it is axiomatic that Section 1983 "solely supports causes of action based upon violations, under the color of state law, of *federal* statutory law or constitutional rights." Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004) (emphasis added). Simply put, "Section 1983 does not provide a cause of action for violations of state statutes" or state constitutional rights. Id. Consequently, Pecha's Section 1983 claims based upon the Pennsylvania Constitution are subject to dismissal on this basis as well.

5

It is generally recognized that a person "has the right to pursue his business relations or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of an absolute right." Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1182 (Pa. 1978). In order to state a claim for tortious interference under Pennsylvania law, a plaintiff must allege:

(1) The existence of a contractual, or prospective contractual relation between the complainant and a third party;
(2) purposeful action on the part of the defendant, specifically intending to harm the existing relation, or to prevent a prospective relation from occurring;
(3) the absence of privilege or justification on the part of the defendant; and
(4) the occasioning of actual legal damage as a result of the defendant's conduct.

CGB Occupation Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004).

In his complaint, Pecha alleges that Botta violated his right to pursue a business relationship with Mid-East by "call[ing] his potential employer in an attempt to prevent [Pecha] from becoming gainfully employed" and "[sending] a letter threatening [Pecha's] potential employer with civil suits if the Plaintiff would be or was hired." (Compl. ¶¶ 27-28). There is no question that this averment properly alleges the existence of a prospective contractual relationship with Mid-East, an act by Bocha intended to harm that prospective relationship, and legal damage as a result of that action. The only remaining issue concerns the third element of Pecha's *prima facia* case: the existence or absence of a privilege or justification for Botta's acts.

In determining whether a defendant's actions are privileged or justified, consideration is given to the following factors:

(a) The nature of the actor's conduct,
(b) The actor's motive,
(c) The interests of the other with which the actor's conduct interferes,
(d) The interests sought to be advanced by the actor,

6

> (e) The proximity or remoteness of the actor's conduct to the interference, and
> (f) The relations between the parties.

Adler, Barish, 393 A.2d at 1184. In addition, the Pennsylvania Supreme Court has held that "the conveyance of truthful information is not 'improper' interference." Walnut Street Associates, Inc. v. Brokerage Concepts, Inc., 20 A.3d 468, 478 (Pa. 2011). Finally, courts have determined that an attorney does not act improperly when he acts in good faith to protect a client's legitimate interests. Kelly-Springfield Tire Co. v. D'Ambro, 596 A.2d 867, 872 (Pa. Super. 1991).

Citing the foregoing principles, Botta contends his actions were privileged because his communications with Mid-East stemmed directly from his representation of 5J and his client's interest in enforcing Pecha's agreement not to compete. The Court agrees. Under Pennsylvania law, an individual is privileged to take action when he has a legally protected interest and takes action or threatens to take action to protect that interest using proper means. Gresh v. Potter McCune Co., 344 A.2d 540, 541 (Pa. 1975). Moreover, as noted above, legitimate activities undertaken by an attorney in the course of representing a client do not constitute improper interference. Kelly-Springfield, 596 A.2d at 872. Pecha does not allege there is anything improper about threatening to file a lawsuit to enforce a presumptively valid contractual agreement; indeed, he concedes in his complaint that Botta acted at all times in the interest of his client, 5J. (Compl. ¶ 32).

Finally, there is "no liability for interference with a contractual relation on the part of one who merely gives truthful information to another." Rantnetwork, Inc. v. Underwood, 2012 WL 1021326, *16 (M.D. Pa. Mar. 26, 2012) (quoting Restatement (Second) Torts § 772, comment b); Walnut Street Associates, 20 A.3d at 478. Pecha does not dispute that Botta's statements to Mid-East concerning the existence of an agreement not to compete and 5J's willingness to file a

civil action to protect that agreement were true. Consequently, Pecha cannot establish the third element of his claim for tortious interference with business relations.

### C. Business Disparagement (Count III)

In order to prevail on a claim for commercial disparagement under Pennsylvania law, a plaintiff must show that the defendant published a statement about plaintiff's business to another and that:

(1) The statement was false;
(2) the publisher either intended the publication to cause pecuniary loss or reasonably should have recognized that publication would result in pecuniary loss;
(3) pecuniary loss did in fact result; and
(4) the publisher either knew the statement was false or acted in reckless disregard of its truth or falsity.

Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243 (Pa. 2002) (citing Restatement (Second) of Torts § 623(A)). An action for business disparagement "is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of its goods have reduced their marketability." Synygy, Inc. v. Scott-Levin, Inc., 51 F.Supp.2d 570, 579 (E.D. Pa. 1999). Consequently, the hallmark of an actionable "disparaging statement" is that the statement "is intended by its publisher . . . to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality." U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 924 (3rd Cir. 1990) (quoting Menefee v. Columbia Broadcasting Sys., Inc., 329 A.2d 216 (Pa. 1974)).

Notably, an action for disparagement is separate and distinct from an action for defamation. As stated by the Third Circuit:

> The distinction between actions for defamation and disparagement turns on the harm towards which each is directed. An action for commercial

8

> disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of his goods have reduced their marketability, while defamation is meant protect an entity's interest in character and reputation.

U.S. Healthcare, 898 F.2d at 924. In other words, "[a] claim for defamation lies where the defamatory statement imputes . . . fraud, deceit, dishonesty, or reprehensible conduct" to the plaintiff, whereas a claim for commercial disparagement attacks "the goods or products of a corporate vendor." Electro Med. Equip. Ltd. v. Hamilton Med. AG, 2000 WL 675716, *2 (E.D. Pa. May 24, 2000) (internal quotes omitted).

In the instant action, Pecha's business disparagement claim consists entirely of his allegation that Botta "published false statements to a potential employer . . . that were disparaging to the Plaintiff regarding his ability as an effective employee." (Compl. ¶ 39). Any such statements, if proven, would clearly represent an attack on Pecha's "character and reputation" rather than his "goods or products." Consequently, Pecha's allegations fall entirely within the purview of defamation law, rather than business disparagement. See, e.g., U.S. Healthcare, 898 F.2d at 924; see also The Knit With v. Knitting Fever, Inc., 2010 WL 3792200, *7 (E.D. Pa. Sep. 28, 2010) (noting that a defamatory statement attacks the reputation of an individual or a company, while a commercially disparaging statement attacks the quality of a company's goods or products); Electro Med. Equip., 2000 WL 675716 at *2 (construing a defamation claim as one for business disparagement because it attacked the defendant's product rather than reputation). Pecha's independent claim for business disparagement must be dismissed.

### D. Usurpation of a Business Opportunity (Count IV)

In the fourth count of his complaint, Pecha attempts to state a claim for "usurpation of a business opportunity" under Pennsylvania law. This claim, based entirely on Botta's conduct in contacting Mid-East concerning Pecha's potential employment, is unsupported and frivolous. The corporate opportunity doctrine deals entirely with actions taken by a director of a corporation in violation of his fiduciary obligations. See, e.g., Committee of Unsecured Creditors of Specialty Plastic v. Doemling, 127 B.R. 945, 951 (W.D. Pa. 1991). Thus, in order to state a claim for usurpation of a business opportunity, the plaintiff must establish that a corporate director "utilized their position to obtain any personal profit or advantage other than that enjoyed by their fellow shareholders." Hill v. Hill, 420 A.2d 1078, 1081 (Pa. Super. 1980). No such facts have been alleged in the instant case.

### E. Defamation (Count V)

To state a claim for defamation, a plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S.A. § 8343(a); Byars v. Sch. Dist., 942 F.Supp.2d 552 (E.D. Pa. 2013). A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Tucker v. Phila. Daily News, 848 A.2d 113, 124 (Pa. 2004). Whether a statement is capable of a defamatory meaning is a question of law for the court. Blackwell v. Eskin, 916 A.2d 1123, 1125 (Pa. Super. 2007) (citing Tucker, 848 A.2d at 123).

It is well-established that "an opinion without more does not create a cause of action in libel." Baker v. Lafayette College, 532 A.2d 399, 401 (Pa. 1987). Rather, in order to prevail, the "allegedly libeled party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." Beckman v. Dunn, 419 A.2d 583, 587 (Pa. Super. 1980) (citing Restatement (Second) Torts § 566). As explained by the Third Circuit:

> [A]n opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion.

Redco Corp. v. CBS, Inc., 758 F.2d 970, 972 (3d Cir. 1985).

In the instant case, Pecha broadly alleges that Botta made "various statements and accusations . . . designed to cast [Pecha] in a bad light to a potential employer." (Id. ¶ 51). This vague allegation lacks the requisite level of specificity to state a claim under Iqbal and Twombley. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556. However, Pecha does provide one specific example of allegedly defamatory conduct: Botta's statement, "I wouldn't trust [Pecha] as far as I could throw him." (Id. ¶ 52). Although this statement is clearly an opinion, a reasonable listener could conclude from the statement that Botta intended to imply the existence of undisclosed facts indicating that Pecha is a dishonest person who cannot be trusted in the workplace. Under such circumstances, courts have regularly permitted plaintiffs to proceed with defamation claims. See, e.g., Regis Ins. Co. v. A.M. Best Co., Inc., 2013 WL 775521, *7 (E.D. Pa. Mar. 1, 2013) (holding that a press release downgrading plaintiff's credit rating was capable of defamatory meaning because it failed to disclose the underlying reasons for the downgrade);

Mzamane v. Winfrey, 693 F.Supp.2d 442, 494 (E.D. Pa. 2010) (statements that new school employees would provide a "different kind of leadership" and "course correct" the direction of the school was capable of defamatory meaning with respect to a deposed employee because it implied "undisclosed facts that reflect poorly on Plaintiff's fitness for her profession as an educator"); Weinstein v. Bullock, 827 F.Supp. 1193, 1198-99 (E.D. Pa. 1993) (police officer's opinion indicating skepticism over an alleged rape victim's description of events was capable of defamatory meaning).

Botta contends that an abundance of verifiable facts support his alleged statement that Pecha is untrustworthy. (Doc. No. 6 at p. 18 n. 9). However, at this stage in the proceedings, those facts are not part of the record before the Court. Consequently, Botta's motion to dismiss will be denied with respect to Pecha's defamation claim.

### F. Declaratory Judgment (Count VI)

Finally, Pecha asks this Court to declare that the Agreement itself is invalid. Pecha contends that the Agreement "was not ancillary or contemporaneous with [his] employment" and "was not supported by adequate consideration nor reasonably limited in duration and geographic extend." (Compl. ¶¶ 63-64).

To obtain declaratory relief under the Declaratory Judgment Act, a plaintiff must demonstrate the existence of "a case of actual controversy." 28 U.S.C. § 2201(a). Whether a request for declaratory relief is ripe depends on consideration of the following list of non-exhaustive factors: (1) the adversity of the interests of the parties; (2) the extent to which the judgment would conclusively define and clarify the legal rights or relations of the parties; and (3) the practical help, or utility, that the judgment would have in remedying the plaintiff's injury.

Step-Saver Data Systems, Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990). Moreover, even where a declaratory judgment action is ripe, it is within a court's discretion to decline to issue declaratory relief. Id. at 646-647 ("Even when declaratory actions are ripe, the Act only gives a court the *power* to make a declaration regarding the rights and other legal relations of any interested party seeking such declaration[;] it does not *require* that the court exercise that power.") (internal quotes omitted) (emphasis in original).

In the instant case, declaratory relief is inappropriate for the simple reason that the defendant, Botta, is not a party to the Agreement in question and has no personal stake in the Agreement's validity. See, e.g., American Home Assur. Co. v. Liberty Mut. Ins. Co., 475 F.Supp. 1169, 1172 (E.D. Pa. 1979) (finding a lack of standing for declaratory relief because the parties were not signatories to the indemnity agreement at issue). In drafting the agreement and communicating its existence to Mid-East, Botta merely provided a legal service to 5J, the true party in interest. As such, Botta and Pecha do not have "adverse legal interests" within the meaning of the Act.[3] Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

V. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss (Docket No. 5) is granted in part and denied in part. An appropriate order follows.

Date: September 30, 2014

                                                 s/ David Stewart Cercone
                                                 David Stewart Cercone
                                                 United States District Judge

---

[3] Pecha did not address this claim in his brief in opposition to Botta's motion to dismiss.

cc: C. E. Kurowski, Esquire
James R. Jeffries, Esquire
Carolyn Batz McGee, Esquire
John J. Myers, Esquire

(*Via CM/ECF Electronic Filing*)