IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHAD PECHA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13cv1666 |
| | ) | **Electronic Filing** |
| **FRANK BOTTA** individually and as | ) | |
| Agent for Eckert Seamans, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

On November 21, 2013, Plaintiff Chad Pecha ("Plaintiff" or "Pecha") initiated this action against a private attorney, Frank Botta ("Defendant" or "Botta"), asserting a variety of state and federal claims stemming from Botta's legal representation of Pecha's former employer, 5J Oilfield Services, LLC ("5J"). (Docket No. 1). The Court previously dismissed Plaintiff's claims for equal protection (§ 1983), tortious interference with business relations, business disparagement, usurpation of business opportunity, and declaratory judgment; but permitted Plaintiff to go forward with his defamation claim. (Docket Nos. 22 & 23).

Presently pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 31) and Plaintiff's Counter Motion for Summary Judgment (Docket No. 34). Defendant has filed a Brief in Support (Docket No. 33) and a Reply Brief (Docket No. 38), and Plaintiff has filed a Brief in Opposition (Docket No. 36). Defendant has also filed a Concise Statement of Material Facts (Docket No. 32), and a Reply to Plaintiff's Statement of Facts (Docket No. 37). Plaintiff filed both his own Concise Statement of Material Facts (Docket No. 35) and a "Counter Statement of Facts" (Docket No. 39), both of which largely fail to respond to

1

Defendant's statement of facts and contain minimal citations to the record aside from citations to the Complaint. In accordance with our Local Rules, "material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding the motion for summary judgment 'unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.'" Murray v. City of Pittsburgh, No. 2:09CV291, 2011 WL 3209090, at *1 (W.D. Pa. July 28, 2011) (citing LR 56.1(E)). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Counter Motion for Summary Judgment will be denied.

II. STATEMENT OF THE CASE

The record as read in the light most favorable to plaintiff establishes the following background. Prior to the events underlying this litigation, Pecha was employed by 5J, a company represented by Botta in his capacity as a private attorney. Defendants' Concise Statement of Material Facts (hereinafter "Def. CSMF") ¶ 1. After the employment relationship ended, and in exchange for 5J agreeing to withdraw a lawsuit filed against Pecha, the parties executed an agreement which included a non-compete clause ("the agreement"). Def. CSMF ¶¶ 2-3. Pecha does not dispute these facts, but strongly maintains that the agreement is legally invalid. Plaintiff's Counter Statement (hereinafter "Pl. CS") ¶¶ 2-4.

At some point afterwards, 5J learned that one of its competitors, Mid-East Trucking ("Mid-East"), had extended an offer of employment to Pecha. Def. CSMF ¶ 4. 5J contacted Botta for legal assistance in enforcing the non-compete agreement. Def. CSMF ¶ 4. Botta telephoned the son of the owner of Mid-East, Brian Barkman ("Barkman"), for the purpose of informing Mid-East of the non-compete agreement and 5J's intention to enforce it. Def. CSMF ¶ 5. Barkman informed Botta that Pecha had told him the agreement was null and void and that

2

the lawsuit against Pecha had been dismissed, rather than withdrawn. Def. CSMF ¶ 6. Botta told Barkman that neither of these statements was accurate. Def. CSMF ¶ 7.

> Mr. Barkman said – well, that was what Mr. Pecha represented to him. And I said that was not true. That was not what occurred. The agreement was not null and void. And I would – in my opinion, I would probably trust Mr. Pecha as far as I could throw him.

(Docket No. 32-1 at 4, Botta Depo. 24:6-10).[1] Following the phone conversation, Botta sent Mid-East a follow-up letter threatening to enforce the agreement. Def. CSMF ¶ 9; Compl. Ex. B. An attorney for Mid-East then sent Botta a letter that stated "in order to avoid the time and costs that would result by being pulled into litigation, Mideast determined that the employment of Mr. Pecha was not in its best interests." Def. CSMF ¶ 9; Compl. Ex. D.

III. LEGAL STANDARD FOR SUMMARY JUDGMENT[2]

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Deciding a summary judgment motion requires the court to view the facts, draw all

---

[1] Pecha avers he does not know whether this is an accurate account of the conversation, Pl. CS ¶ 6, but Botta's deposition testimony appears to be uncontradicted in the record.

[2] Pecha cites to the *Nanty-Glo* rule which is applicable to motions for summary judgment in Pennsylvania state courts. The *Nanty-Glo* rule is not applicable in federal court. Tarlecki v. Mercy Fitzgerald Hosp., No. CIV.A. 01-1347, 2002 WL 1565568, at *1 n. 1 (E.D. Pa. July 15, 2002).

reasonable inferences and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Sec. & Exch. Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360,

382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence is merely colorable or lacks sufficient probative force, summary judgment may be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

IV. DISCUSSION

To state a claim for defamation, a plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S.A. § 8343(a); Byars v. Sch. Dist., 942 F.Supp.2d 552 (E.D. Pa. 2013). Botta argues that Pecha has not adduced sufficient evidence to establish the first, fourth, and sixth elements of his defamation claim.

A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Tucker v. Phila. Daily News, 848 A.2d 113, 124 (Pa. 2004). It is not sufficient for the words to merely embarrass or annoy the plaintiff. Hill v. Cosby, No. 15CV1658, 2016 WL 491728, at *3 (W.D. Pa. Feb. 9, 2016) (citing Beckman v. Dunn, 419 A.2d 583 (Pa. Super. 1980).

Whether a statement is capable of a defamatory meaning is a question of law for the court. Blackwell v. Eskin, 916 A.2d 1123, 1125 (Pa. Super. 2007) (citing Tucker, 848 A.2d at 123). Only after the court determines that the communication can be understood as defamatory

is a jury permitted to determine whether the statement was so understood by the recipient. Hill, 2016 WL 491728, at *2; Agriss v. Roadway Express, Inc., 483 A.2d 456, 461 (Pa. Super. 1984).

It is well-established that "an opinion without more does not create a cause of action in [defamation]." Baker v. Lafayette College, 532 A.2d 399, 401 (Pa. 1987). Rather, in order to prevail, the "allegedly [defamed] party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." Beckman v. Dunn, 419 A.2d 583, 587 (Pa. Super. 1980) (citing Restatement (Second) Torts § 566). As explained by the Third Circuit:

> [A]n opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion.

Redco Corp. v. CBS, Inc., 758 F.2d 970, 972 (3d Cir. 1985); see also Restatement (Second) of Torts, § 566, comment (c) ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently."). "Whether a particular statement constitutes a fact or an opinion is a question of law for the trial court to determine." Hill, 2016 WL 491728, at *3 (citations omitted).

In the present case, the primary statement that is alleged to be defamatory is Botta's remark that he would trust Pecha as far has he could throw him.[3] The Court found at the motion to dismiss stage that "[a]lthough this statement is clearly an opinion, a reasonable listener could conclude from the statement that Botta intended to imply the existence of undisclosed facts indicating that Pecha is a dishonest person who cannot be trusted in the workplace." (Docket No. 23 at 11-12). The Court allowed the defamation claim to move forward so the context of the comment could be established. The Court now has the benefit of those facts.

According to Botta's testimony, which stands uncontradicted, Botta made the comment after Barkman mentioned Pecha had indicated to him that the non-compete agreement was null and void and 5J's lawsuit had been dismissed. Def. CSMF ¶¶ 6 & 7. After Botta informed Barkman that Pecha's representations were inaccurate:

> Mr. Barkman said – well, that was what Mr. Pecha represented to him. And I said that was not true. That was not what occurred. The agreement was not null and void. And I would – in my opinion, I would probably trust Mr. Pecha as far as I could throw him.

(Docket No. 32-1 at 4, Botta Depo. 24:6-10). It is clear from the context that Botta's comment was not a defamatory statement. As previously noted, the distinguishing feature of an opinion capable of defaming and one that is not is whether the speaker presents the facts upon which the opinion is based along with the opinion itself. Rather than "imply[ing] the existence of undisclosed defamatory facts justifying the opinion," Botta disclosed the facts on which he based his opinion – that Pecha had inaccurately represented that the non-compete was null and void and 5J's lawsuit had been dismissed. See Beckman, 419 A.2d at 587. Barkman had the ability

---

[3] Pecha avers in his brief that Botta also advised Mid-East that Pecha "stole from an employer," presumably 5J. Pl. Brief at 8. Pecha does not provide a citation and the Court cannot find anything in the record to support this assertion. Even Pecha's Complaint does not allege Botta told Barkman that Pecha stole from 5J.

7

to accept or reject Botta's opinion "on the basis of an independent evaluation of the facts." See Redco Corp., 758 F.2d at 972. Therefore the Court finds Botta's statement that he would not trust Pecha as far as he could throw him cannot be the basis for a defamation claim.

Pecha also cannot satisfy the sixth element of a defamation claim – that he suffered a special harm resulting from publication of the statement. The only possible harm would be the loss of his job at Mid-East. However, the record indicates that Mid-East decided to fire Pecha in order to avoid the hassle related to the non-compete agreement and 5J's threats to enforce it. The letter from Mid-East's attorney to Botta states "Mid-East chose not to employ Mr. Pecha as a result of your threats of litigation . . . ." Compl. Ex. D. The letter further states "in order to avoid the time and costs that would result by being pulled into litigation, Mid-East determined that employment of Mr. Pecha was not in its best interest." Compl. Ex. D. Not only is there no evidence in the record to contradict this statement, Pecha's own Pretrial Statement takes the same position. (Docket No. 30 at 3) ("As a result of the threats by a state licensed attorney from a prestigious Pittsburgh firm to commence an interstate lawsuit, the company terminates Pecha after a week's employ to avoid being embroiled in a lawsuit filed by Defendant Botta."). Thus, the evidence of record indicates Mid-East decided to fire Pecha in order to avoid the hassle and expense of potential litigation relating to 5J's enforcement of the non-compete agreement and not because Botta indicated an opinion that Pecha was untrustworthy.

Plaintiff's loss of employment due to Mid-East's decision to avoid a lawsuit does not satisfy the harm requirement. "As for the 'special harm' requirement, a plaintiff must plead 'a specific monetary or out-of-pocket loss *as a result of the defamation*.'" Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007) (emphasis added) (quoting Synygy, Inc. v. Scott–Levin, Inc., 51 F.Supp.2d 570, 580 (E.D.Pa.1999)). While the harm resulted, in part, from the conversation wherein the allegedly defamatory statement was

made, it did not result from the allegedly defamatory statement itself. Therefore, no reasonable jury could find that Pecha suffered a special harm as a result of Botta's allegedly defamatory comment.

Botta also argues that Pecha has not adduced sufficient evidence to establish the fourth element of a defamation claim – that the recipient of the statement understood the defamatory meaning. This element is generally a question for the jury. Hill, 2016 WL 491728, at *2. However, the Court notes that Pecha has not adduced *any* evidence to support this element. Given the conclusions that the statement was not defamatory and Pecha did not suffer any harm as a result of the statement, summary judgment would be granted regardless of the outcome of the fourth element.

Pecha attempts to save his defamation claim with a convoluted argument regarding the validity of the non-compete agreement. He argues that the agreement was not valid under Pennsylvania law and as a result, Botta's threats to enforce it with the purpose of getting Pecha fired amounted to defamation. See Pl. Brief at 4-7 ("The determination [of the validity of the agreement] is quintessential to a determination [of] whether Botta defamed with false representations."). Pecha urges the Court to determine the validity of the agreement before deciding the defamation claim. Id.

The Court disagrees and finds the validity of the non-compete agreement is irrelevant to the defamation claim. Defamatory statements are those that impugn the character or reputation of the person being discussed. See Tucker, 848 A.2d at 124 ("It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society.") (quoting Scott-Taylor, Inc. v. Stokes, 229 A.2d 733, 734 (1967). Botta's statement that Pecha was subject to a non-compete agreement, even if the agreement later turns out to be invalid, does not darken

Pecha's reputation or character or "grievously fracture[] his standing in the community of respectable society." Not only did Botta have a good faith belief that the agreement was valid – since no court had held otherwise – but he had an affirmative duty to represent the interests of his client zealously. It is also worth noting that Mid-East consulted its own attorneys with respect to this matter, and had the ability to conduct an independent evaluation of Botta's legal conclusions. Thus, the validity of the non-compete clause raises a host of issues that fail to inform any element of Pecha's defamation claim.

Pecha avers that Botta's purpose in contacting Barkman was to get him fired from Mid-East. That is more or less the point of having a non-compete agreement. Of course, intent to harm is not an element of a defamation claim. See 42 Pa.C.S.A. § 8343(a). It would be a curious result to hold that an attorney who attempted to enforce a contract that a court later held to be invalid had defamed the contracting party against whom he attempted to enforce it. Plaintiff had at his disposal a myriad of ways to challenge the non-compete agreement; proceeding with a defamation action was not one of them. Because it is irrelevant to Pecha's defamation claim, the Court declines to address the validity of the non-compete agreement.

V.  CONCLUSION

The Court finds that there are no material facts in dispute, and Pecha is unable to show that Botta defamed him under Pennsylvania law. Accordingly, Botta's Motion for Summary Judgment (Docket No. 31) will be granted and Pecha's Counter Motion for Summary Judgment (Docket No. 34) will be denied. An appropriate order will follow.

Date: March 29, 2016

                 s/David Stewart Cercone
                 David Stewart Cercone
                 United States District Judge

cc: C. E. Kurowski, Esquire
James R. Jeffries, Esquire
Carolyn Batz McGee, Esquire
John J. Myers, Esquire

(*Via CM/ECF Electronic Mail*)